**In re Edward J. CONROY, Debtor.**

**CHEVY CHASE FEDERAL SAVINGS BANK, Plaintiff,**

v.

**Edward J. CONROY, Defendant.**

**Bankruptcy No. 88–04666–BKC–TCB.**
**Adv. No. 89–0053–BKC–TCB–A.**

United States Bankruptcy Court,
S.D. Florida.

March 31, 1989.

Charles M. Pigott, Lake Park, Fla., for plaintiff.

Robert C. Furr, Boca Raton, Fla., for defendant.

Daniel L. Bakst, Trustee.

## MEMORANDUM DECISION

THOMAS C. BRITTON, Chief Judge.

The plaintiff creditor seeks exception from discharge under 11 U.S.C. § 523(a)(2)(A) and (B) for its claim of $5,595 on a Mastercard account. The debtor has answered and the matter was tried on March 16. Based upon this court's ruling at trial that the complaint failed to allege grounds for relief under § 523(a)(2)(B), plaintiff abandoned that cause of action. Plaintiff proceeded under § 523(a)(2)(A). I now conclude that plaintiff has failed to carry its burden to establish an exception from discharge.

There is no conflicting testimony and the relevant details are not in dispute. There is a conflict with respect to the sufficiency of proof, the inferences to be drawn from the facts and the applicable legal standard.

A debt for obtaining credit by false pretenses, false representation or actual fraud is excepted from discharge under § 523(a)(2)(A). It is plaintiff's contention that it was the victim of a false representation or actual fraud because the debtor had neither the ability nor the reasonable intent to repay the credit card debts incurred from February through April of 1988. (CP 1).[1]

The issue is whether the debtor had *no present intention* to repay the indebtedness when the credit card charges were incurred. *See First Nat'l Bank of Mobile v. Roddenberry*, 701 F.2d 927, 929 n. 3 (11th Cir.1983) (decided under § 17(a)(2) of former Bankruptcy Act, but suggesting in dicta issue to be addressed as "actual fraud" under § 523(a)(2)(A)).

It is well-settled that the use of a credit card by a debtor who does not intend to pay constitutes false representation. 3 *Collier on Bankruptcy* ¶ 523.08[4] n. 19 (15th Ed.1988). Although it is plaintiff's burden to prove that the debtor had an actual intent to defraud, proof of that intent may be inferred from the circumstances. There are a number of reported decisions reaching this conclusion from the pattern of use of credit cards. *See, e.g., In re Dougherty*, 84 B.R. 653 (9th Cir.B.A.P. 1988) (and cases cited therein). Plaintiff's reliance on circumstantial evidence of the debtor's financial condition at the time the charges were made to establish actual fraud is supported by current case law as one of several relevant factors. *See, e.g., In re Williams*, 85 B.R. 494, 499 (Bankr.N.D.Ill.1988).

The debtor's Mastercard account, opened in November 1987, had been completely inactive until February 1988. From February through April 1988 the debtor charged a total amount of $5,595 ($942 for purchases of goods and $4,653 for credit draws on the account). The debtor made no payments for any of these charges. He filed for bankruptcy seven months later, in November 1988.

The debtor, a retired executive, has a yearly pension income from the Remington

---

1. The contention is restated in plaintiff's post-trial memorandum (CP 7 at p. 1) as: "[the debtor] did not intend to repay the monies or that his financial situation was such that he could not reasonably believe he could repay these monies."

Co. of $45,000. His income from other investments was $15,000. In 1985 he became the sole investor in his adult son's ice cream parlor business in Kansas City. The business filed for chapter 11 reorganization in July 1987.[2] The credit card cash advances drawn on by the debtor were used to invest in that business venture.

The debtor's hope of salvaging that failing business is not disputed. It is, of course, commendable that the debtor made an attempt to rescue the business. I do believe that the charges were used for that purpose. However, it is plaintiff's position that the debtor's conduct in drawing on the credit card account when there was no reasonable ability to repay constitutes a false representation or false pretenses. (CP 7 at p. 4).

The debtor's explanation for the use of this account was that he hoped to be successful in his effort to bring the business out of its financial difficulties. The debtor's explanation is plausible. This conclusion is fortified by evidence that he invested approximately $35,000 received as a tax refund into the business in June 1988, after the credit card transactions complained of by the plaintiff. Also, he borrowed against his home equity by a second mortgage in the amount of $20,000 to make further investments in the business.

These circumstances persuade me that the debtor really believed he would have the means to pay these charges by saving the business. Plaintiff has not come forward with sufficient persuasive evidence that the debtor knew his investments were in hopeless trouble and that nothing could save him. There is no evidence whatsoever that he contemplated his own bankruptcy at the time he drew down the credit. The circumstances here do not reflect that the debtor's conduct in using the credit card was so reckless it compels the inference of an actual intent to deceive or defraud. The sufficiency of the debtor's income at the time, including the expected tax refund of $35,000, makes the inference of intent to defraud that may be drawn from reckless conduct inapplicable here.

It is plaintiff's burden to prove exception from discharge "by clear and convincing evidence." *In re Hunter*, 780 F.2d 1577, 1579 (11th Cir.1986). I find that it has failed to do so.

As is required by B.R. 9021(a), a separate judgment will be entered dismissing this complaint with prejudice.

The debtor's motion seeking reimbursement of attorney's fees under § 523(d) has not been heard, and a hearing is set on *April 18, 1989 at 10:30 a.m. in courtroom 329 at 701 Clematis Street, West Palm Beach, Florida,* for the purpose of considering that request. The setting of this hearing does not imply approval of that request, which will be decided after each party has an opportunity to be heard.

DONE and ORDERED.

---

2. The chapter 11 case was converted to chapter 7 in August 1988.