**In re U.S. LOAN CO., INC., Debtor.**

**Bankruptcy No. 89–5013–8P1.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Aug. 31, 1989.

Nancy Farage, Tampa, Fla., for debtor.

Richard McIver, Tampa, Fla., for Federal Nat. Mortgage.

Lynn L. England, Tampa, Fla., U.S. Trustee.

## ORDER GRANTING MOTION TO DISMISS, OR IN THE ALTERNATIVE, A MOTION TO CONTINUE RECEIVERSHIP

ALEXANDER L. PASKAY, Chief Judge.

THIS is a Chapter 11 case filed by U.S. Loan Co., Inc. (Debtor), on July 12, 1989. On July 17, 1989, or five days later, the Federal National Mortgage Association (Fannie Mae) filed a Motion to Dismiss, or in the Alternative, a Motion to Continue Receivership. Fannie Mae also filed a Motion for Relief from Stay and/or Adequate Protection and a Motion to Prohibit Use of Cash Collateral. The Debtor also filed a Motion for Turnover of Property pursuant to § 543 of the Bankruptcy Code. Due to the alleged emergency involved, this Court promptly scheduled a hearing, heard testimony of witnesses and considered the documentary evidence, which established the following facts which are relevant to the matters under consideration.

The Debtor is a Florida corporation engaged in real estate management, sales and financing and commenced doing business in 1986. Its principal and only officer appears to be Vincent Bekiempis (Bekiempis). According to the schedules filed by the Debtor, it is the current owner of a real estate development located in Brandon, Florida, known as Valley View, formerly owned by Valley View Townhouse Association, Ltd (Valley View, Ltd). It appears

that the project, which consists of 48 duplexes is encumbered by 48 separate mortgages securing an indebtedness represented by 48 separate promissory notes. It is without dispute that each of the 48 mortgages and notes is now in default and there is an outstanding aggregate principal balance of $3,164,572.57, plus interest accruing since November 1, 1987, representing a total debt in the approximate amount of $3,820,000.00. The interest is currently accruing at the rate of $29,338.28 per month. The schedules reveal that this obligation is the only secured debt of the Debtor and the mortgages described earlier are held by Deposit Guaranty and not by Fannie Mae, the entity which filed the Motions under consideration. The historical background of this property is somewhat complex but brief comments on same should be helpful to the resolution of the issues raised by several motions filed by Fannie Mae.

It appears that Valley View Ltd. is a limited partnership which filed a Chapter 11 Petition in the District of New Jersey in 1987. The property at that time was encumbered by a first mortgage in favor of Deposit Guaranty/Fannie Mae described earlier and by a second mortgage held by Bekiempis, the principal of this Debtor. The first mortgage in favor of Fannie Mae was signed by Bekiempis, who is also a principal of Valley View Ltd., the New Jersey limited partnership. During the pendency of the Chapter 11 case in New Jersey, both Fannie Mae and Bekiempis filed their respective Motions for Relief from the automatic stay. The Motions were granted. Shortly thereafter, Bekiempis commenced a foreclosure action of his second mortgage in the Circuit Court for Hillsborough County, Florida. In due course he applied for and obtained an appointment for receiver on February 23, 1989. It appears that on March 13, 1989, Bekiempis assigned his interest in his second mortgage to U.S. Loan, Inc., the Debtor. On July 5, 1989, the subject property was sold at the foreclosure sale and the Debtor, who purchased the property by bidding in his judgment, obtained a certificate of title on July 5, 1989. Prior to the commencement of the Chapter 11 case, the Debtor filed a Motion and sought a turnover of the property from the state court. The Motion was denied on July 14, 1989, although no formal order has been entered. The Motion to Dismiss, filed by Fannie Mae, sets forth the following allegations:

a. The Debtor has little or no equity in the property and Fannie Mae believes that the value of the property is declining rapidly.

b. Reorganization is unlikely, as the property is clearly generating insufficient income to service the first mortgage debt. In addition, past due interest is almost $700,000.00, which the Debtor is unlikely to cure within a reasonable period of time.

c. The transfer to Debtor by Vincent Bekiempis, Jr., of his interest in the second mortgage was for the sole purpose of placing the property in bankruptcy to the detriment of Fannie Mae.

d. The state court denied the Debtor's application to terminate the receivership on July 14, 1989, and the Debtor filed its Petition on July 17, 1989.

e. The Debtor has no other significant assets, and is believed by Fannie Mae to be a "shell" corporation with no significant business activity.

f. The Petition is completely devoid of facts indicating an ability to reorganize.

g. The facts and the timing of the Debtor's actions indicate that the Petition was filed solely to frustrate the legitimate efforts of secured creditors to enforce their rights in the property.

The dismissal of this Chapter 11 case is sought pursuant to § 1112(b) and is based on the contention that this is a classic bad faith case and, therefore, it is appropriate to dismiss the Chapter 11 for "cause" under the authorities which considered the issue raised by the Motion. *In re Albany Partners, Ltd.*, 749 F.2d 670 (11th Cir. 1984); *In re Natural Land Corp.*, 825 F.2d 296 (11th Cir.1987); *In re Phoenix Picadilly Ltd.*, 849 F.2d 1393 (11th Cir.1988)

In opposition to the Motion to Dismiss, the Debtor contends that it has substantial equity in the property and most of the

cases cited by Fannie Mae are not persuasive and controlling. In support of its position, the Debtor cites the case of *In re Krilich*, 87 B.R. 178 (M.D.Fla.1988) in which this Court stated that the real test still is that there must be a real need and a real ability to reorganize; that the fact that the Debtor who seeks relief under Chapter 11 has one single asset consisting of real estate encumbered by a mortgage which is in default does not by itself compel the conclusion that the Petition was filed in bad faith even if it was filed for the admitted purpose of preventing loss of the property as a result of a pending foreclosure action.

The property involved in the matter under consideration is a fully developed complex which has a steady rental income, albeit insufficient to service the outstanding mortgage indebtedness, unlike the property involved in *Little Creek Development Co.*, 779 F.2d 1068 (5th Cir.1986). The gross revenue from the property at this time is approximately $33,000.00 a month. The cost of operating the project is about $15,000.00, leaving a net income available to service the mortgage of $18,-000.00. The expenses do not include an escrow for taxes or for insurance. As noted earlier, the per diem interest accrual on the debt is $977.94, or approximately $29,-338.22 per month. Thus, it is without dispute that the project has a serious negative cash flow and insufficient to pay the accruing interest and certainly far from sufficient to reduce the principal.

In order to overcome the obvious, the Debtor urges that it has a substantial equity in the subject property, and the property generates sufficient revenues to make adequate protection payments, a proposition clearly not supported by the record in this case. While it is true that the Debtor may make some periodic payments on the mortgage, in light of the accrual rate of the interest obligation, the amount which might be paid from the income appears to be far from adequate. Considering the history of this project, the fact that it was unsuccessful to achieve reorganization in a previous Chapter 11 in a district court in New Jersey, in light of the fact that this Debtor, the current owner of the subject

according to the schedules, is without any funds sufficient to make payments sufficient to prevent that an accrual of the indebtedness, its ability to effectuate successfully a reorganization is not without serious doubt.

The alleged equity urged by the Debtor is equally highly questionable. According to the MIA appraisal, the property is in a poor condition and currently suffers a 25% vacancy rate. While the Debtor contends this picture now indicates an upward trend, it is still clear, as noted, that the revenues generated are insufficient even to service the interest obligation on the mortgage. According to the MIA appraisal, the buildings have a value of $45,000.00 each, as is, today, or a total of $2,160,000.00, and if the necessary improvements are made, maybe as high as $49,700.00 per building, for a total value of $2,384,640.00, respectively. Based on the following, the ultimate conclusion reached by the appraiser is that the property that is the single asset of this particular Debtor is worth $2,384,640.00.

The Debtor presented its president as an expert on the value of the project. According to his testimony, the project was built in 1983 and it was planned to be sold as individual lots, hence, the 48 separate notes and 48 separate mortgages encumbering these lots. According to the opinion of the president, 39 units are worth $95,000.00 and nine of them are worth $90,000.00, or a total of $4,515,000.00. This is supposing a retail sale of the units. The sellout time is estimated to be sixteenth months, and if the units are sold as condominium units. According to the president of the Debtor the projected gross is claimed to be $6,665,-000.00. This Court is disinclined to accept this highly over-optimistic value projections of the president, a projection which is obviously self-serving and has no underlying acceptable data which would support the values indicated by the president. Rather, accepting the value placed on the property by the MIA appraisal, this Court is satisfied that the aggregate encumbrances against the property are far in excess, the same being $3,164,552.57 of the stated value of $2,384,640.00. It is without dispute

that this is basically a two-party dispute between the Debtor and Fannie Mae. Its only unsecured creditors are insiders in addition to the claims of professionals for services rendered, a certified public accountant firm and attorneys.

To overcome the very substantial authorities by the Court of Appeals, which would certainly support the finding that this Petition was filed in bad faith, thus, is subject to dismissal, the Debtor relies heavily on the case of *In re Coral Springs Medical Association*, 99 B.R. 113 (S.D.Fla.1989). In *Coral Springs*, the bankruptcy court denied a motion to dismiss for bad faith filing, but modified the automatic stay and permitted the second mortgagee to proceed with a pending foreclosure action up to and including the entry of final decree. The court denied the Motion to Dismiss in order to enable the Debtor to formulate a plan which would leave the second mortgage unimpaired. *Coral Springs* involved a medical office building, also a single asset case in which the second mortgagee sought a dismissal. It does not appear from the case that the Debtor was in default on the first mortgage. Obviously, if a first mortgage is current, the debtor could formulate a plan of reorganization which would make provision for the second mortgage, leaving its interest unimpaired, thus, for even the opposition by the second mortgagee could not block the confirmation of the Plan of Reorganization filed by the Debtors. The case of *Acquisition Corporation of America v. Federal Savings & Loan Corporation*, 96 B.R. 380 (D.Ct.S.D.Fla.1988), involved a motion for relief from stay and not a motion to dismiss. In this case the bankruptcy court granted the motion to lift the stay. On appeal the District Court affirmed, based on the finding that the petition was filed in bad faith. This Court is at a loss to understand to what respect the cases cited by the Debtor would support the proposition urged by the Debtor.

In addition, the Debtor urges that the case of *In re North Redington Beach Associates, Ltd.*, 91 B.R. 166 (Bankr.M.D.Fla.1988) decided by this Court compels a conclusion that the Petition was not filed in bad faith and, therefore, the Motion to Dis-

miss should be denied. *North Redington Beach* was a Chapter 11 case involved a debtor with a single asset, a large hotel operation in North Redington Beach, operated under the Hilton franchise. The debtor in that case had close to 200 employees; it had the full support of the franchisor, the Hilton Corporation; its Hilton franchise was not in jeopardy. It suffered economic losses due to the physical damage to the facilities caused by Hurricane Elena, and the record in that case left no doubt that the Debtor was an economically viable entity. The Debtor had the full support of all interests, including the holder of the first mortgage who assisted the debtor to achieve the confirmation of its plan of reorganization. *North Redington Beach* had a very substantial complex debt structure and in addition to the secured indebtedness had an large body of unsecured creditors, all of which were anxious to assist the debtor to survive.

In contrast, this Debtor has no unsecured debts of any consequence except what might be owed to insiders. It has no employees. Even if one accepts the proposition urged by the Debtor that it has equity, this alone would not prevent a dismissal for cause if, in fact, the case was filed in bad faith. *In re Phoenix Picadilly, supra.*

One last comment. The mortgage executed in this subject property was and still appeared to be held per public records by Deposit Guaranty. However, this Court is satisfied the Deposit Guaranty did assign to Fannie Mae a note and the mortgages encumbering the entire complex and the assignment was recorded in the public records of Hillsborough County, Florida, on August 23, 1983 (Exh. 3). Although there is only one assignment put into evidence, this Court is satisfied that it is appropriate to infer that all the remaining notes and mortgages were assigned to Fannie Mae on or about the same day by Deposit Guaranty. Thus, the contention of the Debtor that Fannie Mae has no standing to seek a dismissal, is specious, to say the least, and is without merit.

**680**

This leaves for consideration whether or not this Debtor should be given a brief respite and opportunity to achieve reorganization. This Court is satisfied that the project as structured lacks the economic viability necessary for an effective reorganization, considering the history of this project and its involvement in an aborted Chapter 11 case in the district of New Jersey. Thus, while the Debtor might need the relief, its ability to effectuate a reorganization is highly questionable considering the entire facts surrounding this case. Based on the foregoing, this Court is satisfied that the Petition was, in fact, filed in bad faith and for this reason there is cause for dismissal pursuant to § 1112(b) of the Bankruptcy Code.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the above Chapter 11 case shall stand as dismissed pursuant to § 1112(b) of the Bankruptcy Code. It is further

ORDERED, ADJUDGED AND DECREED that the effectiveness of this Order of Dismissal shall be suspended for ten (10) days from the date of entry and Fannie Mae shall not undertake any action to proceed with the foreclosure action during the ten (10) day period fixed herein.

DONE AND ORDERED.