### In re ORANGE PARK SOUTH PARTNERSHIP, Debtor.

**Bankruptcy No. 87–4224.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Oct. 22, 1987.

**80**

James H. Post, Jacksonville, Fla., for debtor.

Douglas D. Chunn, Jacksonville, Fla., for Great Southern Sav. Bank.

## ORDER ON MOTION TO DISMISS

ALEXANDER L. PASKAY, Chief Judge.

THE MATTER under consideration in this Chapter 11 case is the Motion to Dismiss filed by Great Southern Savings Bank (Great Southern). It is the position of Great Southern that based on undisputed facts as appear from the record and based on the facts which are not in dispute, this is a classic case of "bad faith" filing and, therefore, the Chapter 11 case should be dismissed pursuant to 11 U.S.C. § 1112(b). The facts which are indeed without dispute and admitted by the Debtor are as follows:

On May 22, 1985, Blanding Partnership (Blanding), a Florida general partnership, executed two promissory notes in favor of Great Southern, one in the principal amount of $7,600,000.00 and a second in the principal amount of $5,300,000.00. These obligations were secured by a mortgage and a security agreement executed on the same date by Blanding in favor of Great Southern. Both notes were to mature in five years from date and included a two-year extension provision, although it is not clear whether or not the right of extension was granted to Blanding or to Great Southern. Be that as it may, it is without dispute that both notes fell into default in June, 1986 and were accelerated by Great Southern in October, 1986. Great Southern filed its foreclosure action in November, 1986, in the Circuit Court in and for Clay County, Florida.

At this point it should be noted that the Debtor's property involved in the controversy, which is a shopping center, was originally owned by Mr. and Mrs. Fleming and one Mr. Constain (Fleming Group). In July 1986, the original owners sold the shopping center to Blanding and took back a second mortgage, securing a $300,000.00 note. It further appears that Blanding defaulted on its obligation to the Fleming Group who then filed a mortgage foreclosure action in order to enforce their second mortgage lien in July 1986. It is without dispute that on October 4, 1986, a final judgment was obtained.

In due course the foreclosure of their lien was scheduled and the shopping center was in fact sold at the foreclosure sale in December, 1986, back to the Fleming Group, who in turn conveyed the subject property to O.P.S. Shopping Center, Inc. (O.P.S.). All these events took place after Great Southern filed its own foreclosure action naming the Fleming Group and this entity controlled by Mr. and Mrs. Fleming as defendants.

On December 24, 1986, Great Southern and the Defendants named in the foreclosure action entered into a stipulation. According to its terms, the Defendants acknowledged that they are indebted to Great Southern in the principal amount of $9,752,-516.44, $696,009.26 in interest, $300 for the title search and additional interest accrued in the amount of $4,674.30. In addition the defendants also waived any and all defense to the claim of Great Southern or to its mortgage; conceded that there is no equity in the subject property; and agreed that the receivership originally imposed during the Fleming Group's foreclosure action shall be continued. They also agreed to the entry of a final judgment in the event the obligation due to Great Southern is not paid in full by April 1, 1987. Most importantly, however, the Defendants also agreed that in the event a bankruptcy is filed by the new owner, the O.P.S., Inc., the filing would be admitted to be totally un-

founded and that it was filed solely for the purpose of delay. As part of the stipulation, Mr. and Mrs. Fleming also personally guaranteed the performance of the terms of the stipulation agreement, and again conceded that there is no equity in the subject property.

It is without dispute that the Defendants failed to satisfy the mortgage obligation by April 1, 1987, as required by the stipulation. As the result Great Southern proceeded with its foreclosure and in due course obtained a final judgment in the amount of $10,726,548.74, and the property was ordered to be sold and scheduled to be sold on May 26, 1987, the day after the Memorial Day holiday.

It further appears and it is without dispute that on Friday, May 22, 1987, the Flemings formed Orange Park South Partnership (Debtor), a general partnership composed of O.P.S., Inc., in which the Flemings are the sole stockholders, and an entity known as the Marina Center, Inc., a non-related entity. On Friday afternoon, May 22, 1987, or four days prior to the scheduled foreclosure sale, this newly formed partnership filed its Petition for Relief under Chapter 11. It is without dispute that the shopping center was never owned as a matter of public record by the Debtor partnership and is still recorded in the public record as owned by O.P.S. Shopping Center, Inc., the non-debtor. The Debtor's contention that the partnership agreement which was filed for record shows a beneficiary interest in the subject property is without significance in the context of the issue raised by the Motion under consideration.

The schedules filed by the Debtor indicate three unsecured debts, one in the amount of $1100.00 in favor of an entity named as Gator Cleaning; one in the approximate amount of $25,000.00, in favor of Mr. and Mrs. Fleming, the President of O.P.S. Shopping Center, Inc.; one in favor of one G.E. Carter, who turns out to be the state court receiver who had never been released from the receivership, thus technically he is still the receiver. The debt allegedly owed to him is not based on his receiver's fee. It should be noted that money allegedly paid by Carter to The First Trust Bank was paid not on behalf of the Debtor, but on behalf of O.P.S. Shopping Center, Inc. Be that as it may, it is clear that the debt claimed to be owing to Mr. and Mrs. Fleming long pre-dates the formation of the Debtor and it clearly is not an obligation incurred by the Debtor. Neither is the claim of Mr. Carter or the First Trust Bank, although it is contended that all these debts have been assumed by the Debtor.

There is no question that this newly born Debtor never had and has no employees; conducts no business, and it is a mere shell entity created on the eve of the foreclosure sale by Mr. Fleming. Its sole interest in the subject property is this so-called equitable ownership created by the partnership agreement signed on May 22, although attempted it be made retroactive back to May 1, 1987.

Based on the foregoing undisputed facts, it is the contention of Great Southern that this is a classic case of "bad faith" filing and the Chapter 11 case should be dismissed for "cause" pursuant to § 1112(b) of the Bankruptcy Court. In opposing the Motion of Great Southern, counsel for the Debtor contends that the Debtor has a genuine desire and need to effect a reorganization, therefore, it should be given an opportunity to do so even though there is hardly any doubt that the case was filed to prevent the loss of the property through the impending foreclosure sale.

As indicated earlier, the dismissal sought by Great Southern of this Chapter 11 case is based on § 1112(b) of the Bankruptcy Code, which inter alia, provides as follows:

11 U.S.C. § 1112(b) Conversion or dismissal.

Except as provided in subsection (c) of this section, on request of a party in interest, and after notice and a hearing, the court may convert a case under this chapter to a case under Chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause....

Great Southern seeks a dismissal for "cause." The term "cause" as used in this Section is not defined. However, it is now universally recognized that it is appropriate to dismiss a Chapter 11 case for "cause" if it appears that the petition was filed in bad faith. *In re Waldron, et al.*, 785 F.2d 936 (11th Cir.1986); *In re Albany Partners, Ltd.*, 749 F.2d 670 (11th Cir.1984); *In re Thirtieth Place, Inc.*, 30 B.R. 503 (9th Cir. 1983); *In re Wamsganz*, 54 B.R. 759, 13 B.C.D. 973 (Bankr.E.D.Miss.1985); *In re Levinsky*, 23 B.R. 210 (Bankr.E.D.N.Y. 1982); *In re Spenard Ventures, Inc.*, 18 B.R. 164 (Bankr.D.Alaska 1982); *In re Victory Construction Co., Inc.*, 9 B.R. 549 (Bankr.C.D.Cal.1981).

This Court recently addressed the issue of dismissal of a Chapter 11 case for "cause" in *In re Welwood Corporation*, 60 B.R. 319 (Bankr.M.D.Fla.1986). In *Welwood, supra*, this Court, citing *Little Creek Development Co. v. Commonwealth Mortgage Corp.*, 779 F.2d 1068 (5th Cir. 1986), articulated several factors which are usually present in Chapter 11 cases not filed in good faith and which may be considered in a motion to dismiss for cause:

1) debtor has one asset such as a tract of undeveloped or developed real property;

2) the secured creditors' liens encumber this tract;

3) there are generally no employees except for the principals;

4) little or no cash flow, and no available sources of income to sustain a plan of reorganization or to make adequate protection payments;

5) few, if any, unsecured creditors whose claims are relatively small;

6) the property has usually been posted for foreclosure because of arrearages on the debt;

7) the debtor has been unsuccessful in defending actions against the foreclosure in state court;

8) the debtor and one creditor may have proceeded to a standstill in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford;

9) allegations of wrongdoing by the debtor or its principals; and,

10) the "new debtor syndrome" in which a one-asset equity has been created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors.

The undisputed facts as revealed by the record clearly put the Debtor in a virtually indefensible position when compared to the facts as set forth in *Little Creek*, supra. However, this case is even worse than any cases cited earlier for several reasons. First, the Debtor partnership does not even own the property it seeks to salvage. Second, the principals who are now seeking to obtain relief in this Court, already conceded and stipulated that they have no defense to the claim of Great Southern; third, they conceded that there is no equity in the subject property involving the shopping center; and fourth, that in the event the bankruptcy petition is filed, it was filed solely for the purpose of delay and would be unfounded. While it is contended by counsel for the Debtor that the stipulation is not binding on this Debtor, there is absolutely nothing in this record which would warrant the conclusion that the stipulation was obtained either by coercion, fraud or by mutual mistake of material facts which have been traditionally recognized as the only valid bases to rescind an agreement. *See Duncan Properties, Inc. v. Key Largo Ocean View, Inc.*, 360 So.2d 471 (Fla. 3d DCA 1978) In order to escape the binding effect of the stipulation, it is intimated by the counsel for the Debtor that the guaranty obtained by Great Southern from the Flemings was a result of duress and over-reaching. This argument is a non sequitur as the guaranty, even if obtained by duress, has no bearing on the binding effect of the stipulation set forth above.

It is the contention of counsel for the Debtor that this Debtor has an actual need and has a sincere desire to achieve rehabilitation and, therefore, should be permitted to salvage this alleged equity. This Court has not been able to find any authority to support a rule which supports the proposition urged by counsel until the Court has a

chance to examine the Plan of Reorganization submitted by the Debtor and the Debtor should be given an opportunity to proceed and attempt to present its plan of reorganization. This very argument was advanced in a recently decided case by the Eleventh Circuit Court of Appeals, in the case of *In re Natural Land Corporation,* 825 F.2d 296 (11th Cir.1987), and was flatly rejected. Based on the foregoing, this Court is satisfied that the Petition for Relief filed by this Debtor partnership was filed in "bad faith" and for this reason the Motion filed by Great Southern to Dismiss is well taken and

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that this Motion to Dismiss the Chapter 11 case filed by Great Southern Savings Bank be, and the same is hereby, granted and the case is hereby dismissed.