**In re CLUB TOWER L.P., a Georgia Limited Partnership, Debtor.**

**Bankruptcy No. 91-71169-HR.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Dec. 26, 1991.

## ORDER ON MOTION TO DISMISS OR IN THE ALTERNATIVE FOR RELIEF FROM AUTOMATIC STAY

HUGH ROBINSON, Jr., Bankruptcy Judge.

On June 14, 1991, Movant, Teacher Retirement System of Texas (TRST) brought the above styled motion and for reasons set forth herein the court will grant the motion by lifting the automatic stay, for cause, per 11 U.S.C. § 362(d)(1).

The facts are not in dispute and may be quickly summarized.

On.June 6, 1991, Club Tower, L.P. (the "Debtor") commenced this bankruptcy case under Chapter 11 of the Bankruptcy Code.

On April 13, 1988, the Debtor and TRST entered into a Permanent Loan Agreement whereby TRST agreed to loan the Debtor up to $39,000,000.00 in order to provide permanent financing for Club Tower Apartments, a luxury high-rise apartment building owned by the Debtor and located in Fulton County, Georgia (the "Property").

To secure interim financing for construction of the Property, the Debtor executed a Promissory Note dated April 13, 1988, in favor of The Citizens and Southern National Bank (C & S) in the original principal amount of $39,000,000.00. The Note was transferred and assigned to TRST pursuant to an Absolute Assignment of Deed to Secure Debt, Security Agreement and Financing Statement dated November 21, 1989, by and among the Debtor, C & S and TRST (the "Assignment of Deed").

To secure payment of the Note, the Debtor executed to C & S a Deed to Secure Debt, Security Agreement and Financing Statement (the "Security Deed") dated April 13, 1988. The Security Deed was transferred and assigned to TRST pursuant to the Assignment of Deed. The Security Deed, as assigned, created and conveyed to TRST a first-priority lien and security interest in all right, title and interest of the Debtor in and to the Property and all leases, rental contracts, rents, loyalties, issues, profits, revenues, income, prepaid rent, proceeds and security deposits relating to or arising from the operation of the Property.

As additional security for payment of the indebtedness evidenced by the Note, the Debtor executed and delivered to C & S an Assignment of Lessor's Interest in Leases dated April 13, 1988, which assigned to C & S, who in turn transferred and assigned to TRST, all of the Debtor's right, title and interest in and to all leases and other rental and income producing agreements covering all or part of the Property.

Thus, TRST is the owner and holder of the Permanent Loan Agreement, Security Deed and Assignment.

TRST holds properly perfected first-priority, pre-petition liens and security interests in the Property, Rents and Leases.

Beginning in September 1990, the Debtor defaulted on its obligations to TRST under the Permanent Loan Agreement, as amended, and under the Security Deed.

After workout negotiations, Debtor and TRST entered into an agreement in February 1991, (the "Forbearance Agreement") whereby TRST agreed to forbear from exercising its rights and remedies as a secured creditor until May 31, 1991, provided

that the Debtor was successful in raising $1,000,000 in new equity to cover deferred payments of interest on the loan and anticipated future operating deficits on the Property. In exchange, the Debtor agreed to tender to an escrow agent a deed conveying all of its right, title and interest in the event that the Debtor was not successful in raising the new equity prior to or on May 31, 1991.

The Debtor tendered the deed to the Property to the designated escrow agent with instructions that the deed be released to TRST in the event that the Debtor was unsuccessful in raising $1,000,000 prior to May 31, 1991.

As part of the Forbearance Agreement, the Debtor agreed that TRST would be entitled to immediate relief from the automatic stay in the event that the Debtor filed a petition for relief under the Bankruptcy Code.

On May 31, 1991, the Debtor informed TRST that it had been unsuccessful in raising the new equity as required by the Forbearance Agreement and requested an extension of time in which to continue its efforts. TRST consented to an additional extension of the forbearance period, conditioned upon the Debtor's payment of the net operating income generated by the Property during the month of May to TRST by June 6, 1991.

Debtor failed to pay the May net operating income as agreed and on June 6, 1991, filed the instant Chapter 11 bankruptcy proceeding.

Debtor has only one asset, namely, the Club Tower Apartment project.

Debtor has no employees. It has only a few unsecured creditors whose claims are de minimis. The dispute in question is basically one involving the Debtor and its secured lender.

Movant argues that the Debtor acted in bad faith by filing this bankruptcy petition and in the alternative, that the stay should be lifted per 11 U.S.C. § 362(d)(1), for cause, because pre-petition, the Debtor had specifically agreed to transfer the Property to Movant if it could not meet the terms of the "Forbearance Agreement" which all agree were not met. This court agrees with Movant on both points.

### A. Bad Faith Filing

■ Section 1112(b) of the Bankruptcy Code provides that the court may dismiss a case under Chapter 11 for "cause". 11 U.S.C. § 1112(b). Courts have held that the Debtor's lack of good faith in filing a bankruptcy case constitutes "cause" for dismissing the case. *In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir. 1984); *In re Waldron*, 785 F.2d 936 (11th Cir.), *cert. dismissed*, 478 U.S. 1028, 106 S.Ct. 3343, 92 L.Ed.2d 763 (1986); *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394 (11th Cir.1988); *In re Little Creek Development Company*, 779 F.2d 1068, 1072 n. 2 (5th Cir.1986).

The courts have not articulated a particular test for determining whether a debtor has filed a petition in bad faith. Instead, they consider a variety of factors which evidence "an intent to abuse the judicial process and purposes of the reorganization provisions" or which demonstrated that the petition was filed "to delay or frustrate the legitimate efforts of secured creditors to enforce their rights." *Phoenix Piccadilly*, 849 F.2d at 1394 (*quoting, Albany Partners*, 749 F.2d at 674).

■ Among the factors considered are:

1. The Debtor has only one asset, the Property;

2. The Debtor has few unsecured creditors whose claims are small in relation to the claims of the secured creditor;

3. The Debtor has few employees;

4. The Property is the subject of a foreclosure action as a result of arrearages on the debt;

5. The Debtor's financial problems involve essentially a dispute between the Debtor and secured creditor which can be resolved in a state court action; and

6. The timing of the Debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the Debtor's

secured creditors to enforce their rights.

*Phoenix Piccadilly,* 849 F.2d at 1394–95; *In re East–West Associates,* 106 B.R. 767 (S.D.N.Y.1989); *In re Natural Land Corp.,* 825 F.2d 296 (11th Cir.1987).

The Debtor has one asset, Club Tower Apartments. TRST's liens and security interests fully encumber that Property. The Debtor has only a few unsecured creditors whose claims are relatively small. The Debtor has no employees, no cash flow, and no available sources of income to sustain a plan of reorganization or to make adequate protection payments, all income from the Property having been absolutely assigned to TRST.

The court believes that the only objective in filing this case was to delay and frustrate the efforts of TRST to enforce its rights and remedies as a secured creditor. The Debtor and TRST agreed, as part of their negotiations regarding the forbearance period, that a $1,000,000 equity infusion was needed to bring the loan current and to offset future operating deficits on the Property. The Debtor agreed that if it was unsuccessful in raising the needed capital that it would convey title to the Property to TRST, and in fact, tendered a deed to the Property to an escrow agent with instructions to deliver the deed of Trust on June 1, 1991, if the new equity had not been raised. Having been unsuccessful in raising the needed equity and faced with the prospect of honoring its agreement with TRST, the Debtor filed this bankruptcy case.

There is no going concern to preserve, there are no employees to protect, and there appears to be little hope of rehabilitation.

■ The Debtor takes the position that there is sufficient equity in the Property to support a successful reorganization. A finding that the Debtor has equity in the Property does not prevent a dismissal for cause because this case was filed in bad faith. *In re U.S. Loan Co., Inc.,* 105 B.R. 676 (Bankr.M.D.Fla.1989); *In re Natural Land Corp.,* 825 F.2d 296 (11th Cir.). In *Natural Land,* the Court stated:

the taint of a petition filed in bad faith must naturally extend to any subsequent reorganization proposal; thus, any proposal submitted by a debtor who filed his petition in bad faith would fail to meet section 1129's good faith requirement, 825 F.2d at 298.

■ In other words, the possibility of a successful reorganization cannot transform a bad faith filing into one undertaken in good faith. *Phoenix Piccadilly,* 849 F.2d at 1395.

Section 362(d) of the Bankruptcy Code provides:

On request of a part in interest and after notice and a hearing, the Court shall grant relief from the stay provided under subsection (a) of this section ...

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest....

■ A bad faith filing of a bankruptcy petition constitutes "cause" justifying relief from the automatic stay under Section 362(d)(1) of the Bankruptcy Code. *Phoenix Piccadilly,* 849 F.2d at 1394; *Natural Land,* 825 F.2d at 297. The test for determining whether a bankruptcy case was filed in bad faith is the same under Section 362 and Section 1112(b). Accordingly, because the Debtor filed this bankruptcy case in bad faith, TRST is entitled to relief from the automatic stay to exercise its rights and remedies as a secured creditor.

B. *Forbearance Agreement and Waiver of Stay Protection*

■ TRST also is entitled to relief from the automatic stay by virtue of the terms of the Second Amendment to Permanent Loan Agreement entered into by the Debtor and TRST as part of their Forbearance Agreement. Paragraph 8 of the Second Amendment to Permanent Loan Agreement provides that in the event that the Debtor files for bankruptcy, TRST "shall thereupon be entitled to relief from any automatic stay imposed by Section 362 of Title 11 of the U.S.Code, as amended, or otherwise, on or against the exercise of the

rights and remedies otherwise available to [TRST]."

■ Pre-petition agreements regarding relief from stay are enforceable in bankruptcy. Judge Proctor and Judge Paskay from the United States Bankruptcy Court for the Middle District of Florida have specifically held that such pre-petition agreements and stipulations are binding on a borrower who later files for bankruptcy. *In re Citadel Properties, Inc.,* 86 B.R. 275 (Bankr.M.D.Fla.1988); *In re Orange Park South Partnership,* 79 B.R. 79 (Bankr. M.D.Fla.1987).

The facts in *Citadel Properties* are very similar to the facts in this case. After the borrower had defaulted under its obligations, the borrower and the lender entered into a settlement agreement in which the lender agreed to ·forbear enforcing a foreclosure judgment, and in return the borrower agreed that the lender would be entitled to immediate relief from the automatic stay, should the borrower later file for protection under the Bankruptcy Code.[1] The borrower later filed for bankruptcy and the lender argued it was entitled to relief from stay by virtue of the terms of the settlement agreement. Judge Proctor held that the terms of the pre-petition agreement were binding on the parties and that the lender was entitled to enforce the terms of the pre-petition agreement regarding lifting the automatic stay. Therefore, cause existed to lift the automatic stay pursuant to § 362(d)(1).

In *Orange Park South,* the lender filed a foreclosure action which resulted in the lender and the defendants in the foreclosure action entering into a stipulation. The lender agreed to forbear proceeding on its foreclosure action. In return, the defendants conceded that there was no equity in the property and agreed, *inter alia,* that in the event a bankruptcy was later filed, the filing would be admitted to be totally unfounded and that it was filed solely for the purpose of delay. 79 B.R. at 80–81. The property ended up in bankruptcy and

the lender filed a motion to dismiss the case as a "bad faith" filing pursuant to 11 U.S.C. § 1112(b). Judge Paskay found a bad faith filing based upon, in part, the pre-petition stipulation that there was no equity in the property and that in the event that a bankruptcy petition was later filed, it was filed solely for the purpose of delay and would be unfounded. Judge Paskay found that the stipulation was binding on the debtor. 79 B.R. at 82.

■ As noted in the *Citadel Properties* case, enforcing a pre-bankruptcy agreement provision by which a debtor agrees not to oppose the granting to a lender of relief from stay is significantly different from a provision which prohibits a debtor from filing a bankruptcy petition and thus there is no violation of public policy.

First, by agreeing not to contest stay relief, Debtor was not estopped from filing for bankruptcy relief in general and has indeed filed its petition.

Second, Debtor agreed to and did in fact waive a single benefit of the Bankruptcy Code, not all of the rights and benefits provided by the Code as is the case where a borrower agrees to waive its right to file bankruptcy. Moreover, Debtor has already received the benefit of the automatic stay because TRST has been and presently is stayed from enforcing its rights under the Loan Documents. No provision in the Bankruptcy Code guarantees a debtor that the stay will remain in effect throughout the bankruptcy case. To the contrary, Congress specifically provided creditors a means for obtaining relief from stay.

Furthermore, Debtor still retains the benefits of the automatic stay as to other creditors, as well as all the other benefits and protections provided by the Bankruptcy Code including but not limited to the right to conduct an orderly liquidation, discharge debt or pay it back on different terms, assume or reject executory contracts, sell property free and clear of liens, and pursue preferences and fraudulent conveyance claims. Debtor still retains the

---

1. Judge Proctor noted that the agreement did not prohibit the borrower from filing for bankruptcy and that such a prohibition would be contrary to constitutional authority as well as public policy. 86 B.R. at 275.

core rights under the Bankruptcy Code and has the ability to make a "fresh start". Therefore, enforcing Debtor's agreement does not violate the public policy concerns that agreements which prohibit a borrower from filing for bankruptcy violate.

 Moreover, enforcing pre-petition settlement agreements furthers the legitimate public policy of encouraging out of court restructurings and settlements. *See e.g., In re Colonial Ford, Inc.,* 24 B.R. 1014 (Bankr.D.Utah 1982). The Bankruptcy Code also recognizes that the filing of a bankruptcy petition might not always be the most efficient means of restructuring the relations of a debtor and its creditors. *See* 11 U.S.C. § 305(a).

Workouts and restructurings should be encouraged among debtors and creditors, particularly where, as here, there is a debt between two parties and a single asset. Under these circumstances, filing for bankruptcy should be a last resort. In order to facilitate this goal, pre-petition agreements should be enforced against a borrower who later files for bankruptcy. To hold otherwise could make lenders more reticent in attempting workouts with borrowers outside of bankruptcy.

Therefore, the court does hereby vacate the automatic stay of 11 U.S.C. § 362(d)(1) and will grant the motion of TRST.

IT IS SO ORDERED.