### In re JENKINS COURT ASSOCIATES LIMITED PARTNERSHIP, Debtor.

### Bankruptcy No. 94–17748SR.

United States Bankruptcy Court,
E.D. Pennsylvania.

April 25, 1995.

Andrew C. Kassner, Drinker, Biddle & Reath, Philadelphia, PA, for JCP.

Albert Bixler, Connelly, Epstein, Chicco, Foxman, Englemyer & Ewing, Philadelphia, PA, for debtor.

Louis C. Ricciardi, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, PA, for Official Committee of Unsecured Creditors.

## *OPINION*

STEPHEN RASLAVICH, Bankruptcy Judge.

This matter is before the Court upon the Motion of Jenkins Court Pennsylvania, L.P. ("JCP") to Dismiss, or, in the alternative, For Relief From the Automatic Stay (the "Motion"). The Motion is opposed by the Debtor, Jenkins Court Associates Limited Partnership (the "Debtor"). A preliminary hearing was scheduled for March 6, 1995, however, in lieu of an evidentiary hearing on that date the parties agreed that the Court should first determine whether a waiver of the automatic stay granted by the Debtor to JCP pursuant to a pre-petition settlement

agreement dated July 2, 1992, should be enforced, since that issue may be determinative. A further hearing was held on March 15, 1995, at which time the parties argued their respective positions regarding the enforceability of the pre-petition waiver. If the Court determines the waiver should not be enforced, the parties have requested that the Court schedule a further evidentiary hearing to consider the remainder of the Motion on or before 15 days after the Court enters its Opinion and Order making the former determination.

### Background

The facts, as alleged by JCP, are as follows.[1] On January 9, 1989, Fleet National Bank ("Fleet") made a loan (the "Construction Loan") to the Debtor in the original principal amount of $17,820,000, to enable the Debtor to 1) acquire a parcel of land in Jenkintown, Pennsylvania, 2) to rehabilitate certain improvements located on the parcel, and 3) to construct additional improvements on the parcel (collectively the "Project"). As security for the Construction Loan, the Debtor executed a construction mortgage and security agreement (the "Mortgage"), as well as an assignment of rents and leases (the "Assignment"), thereby granting Fleet certain liens and other rights. The Mortgage and Assignment were recorded in the Office of the Recorder of Deeds for Montgomery County.

JCP avers that the Construction Loan was not intended to constitute permanent, long term financing for the Debtor. Rather, JCP avers, the Debtor was expected to obtain refinancing from another lender upon completion of the construction.

The Construction Loan, the Mortgage and the Assignment were amended in February 1991, January 1992 and July 1992, in order to, among other things, extend the maturity date and increase the amount of the Construction Loan. On June 15, 1994, the Construction Loan matured by its terms and all outstanding amounts became due and pay-

---

1. The Debtor neither admits, nor denies, the facts as set forth by JCP. The Debtor, however, has stipulated to the admission of the documentation attached to the Motion. The Court has chosen to restate JCP's factual statement, as set forth in JCP's Memorandum of Law in support of the Motion, to provide a background upon which to discuss the issue of the enforceability of the waiver.

able. On or about September 30, 1994, Fleet assigned its rights under the Construction Loan and related documents to JCP.

JCP contends that notwithstanding the additional years which have been given to the Debtor to locate permanent financing, the Debtor has yet to locate a lender willing to provide such financing in an amount that would satisfy the indebtedness due under the Construction Loan. Thus, according to JCP, the Debtor has defaulted in its obligations under the Construction Loan. Moreover, JCP has not even received interest payments from the Debtor since November 1994.[2]

JCP avers that as of the Petition Date, the Debtor's obligations to JCP under the Construction Loan total approximately $25,000,-000. The Debtor's has scheduled its obligation to JCP as a disputed secured claim in the amount of approximately $21,000,000.

The waiver provision at issue provides that

[i]n the event the Borrower files for protection under the Federal Bankruptcy Code or any other similar federal or state law providing for protection from creditors, then the Debtor unconditionally and irrevocably agrees that (i) the lender shall immediately be entitled to relief from the stay so as to take possession, collect rents, foreclose its mortgage, or otherwise exercise its rights and remedies with respect to the Project without any delay whatsoever; (ii) the fair market value of the Project is substantially less than the balance outstanding under the Loan Documents and so no chance of a successful reorganization of the Borrower exists; and (iii) any bankruptcy or similar proceeding in which the Borrower rejects or otherwise fails to honor the foregoing agreements shall *per se* be deemed to have been commenced in bad faith so as to frustrate the exercise of the Lender's rights and remedies with respect to the Project.

Section 3(d) of the Second Amended Settlement Agreement.

JCP argues that it is entitled to relief from the automatic stay for "cause" under 11 U.S.C. § 362(d)(1) due to the Debtor's agreement to such relief in the foregoing provision. The Debtor argues that enforcement of the provision would be inconsistent with the broad purposes of the Bankruptcy Code, and, accordingly, the Court should not enforce the waiver. The waiver aside, JCP also argues that in the above provision the Debtor also acknowledged its lack of equity in the Project and, concomitantly, the absence of any chance for a successful reorganization, and further acknowledged that any bankruptcy proceeding in which it failed to honor both of these admissions would be deemed to have been commenced in bad faith. These facts JCP also points to as alternate grounds for modification of the stay or dismissal of the bankruptcy case.

**Discussion**

In recent years, the issue of the enforceability of pre-petition waivers of the automatic stay has been considered by numerous bankruptcy courts. While a number of those courts have concluded that a pre-petition waiver is valid and enforceable, others disagree. *In re Powers*, 170 B.R. 480 (Bankr. D.Mass.1994) (enforcing pre-petition waiver agreement); *In re Cheeks*, 167 B.R. 817 (Bankr.D.S.C.1994) (same); *In re Club Tower, L.P.*, 138 B.R. 307 (Bankr.N.D.Ga.1991) (same); *In re Citadel Properties, Inc.*, 86 B.R. 275 (Bankr.M.D.Fla.1988) (same); *but see, Farm Credit of Cent. Florida, ACA v. Polk*, 160 B.R. 870 (M.D.Fla.1993) (pre-petition agreements waiving the automatic stay are not per se binding on the debtor, for public policy reasons); *In re Sky Group Int'l, Inc.*, 108 B.R. 86 (Bankr.W.D.Pa.1989) (refusing to enforce a pre-petition waiver agreement).

The decisions holding that a pre-petition agreement waiving the automatic stay is valid and enforceable, and which are relied upon by JCP, can be separated into two categories: First, certain courts have held that a pre-petition waiver of the automatic stay is valid and enforceable in conjunction with a factual determination that either the debtor filed his bankruptcy petition in bad faith or

**2.** The Debtor filed its petition under Chapter 11 of the Bankruptcy Code (the "Petition") on No-

vember 23, 1994 (the "Petition Date").

there was no possibility of an effective reorganization. *See In re Club Tower, L.P., supra; In re Citadel Properties, Inc., supra.*

■ In view of this, and as noted at the March 15, 1995 hearing, the Court is somewhat perplexed as to why JCP agreed to bifurcate the issues and rest on the very limited record now before the Court. JCP's exclusive reliance on the admissions in Sections 3(d)(ii) and (iii) of the Second Amended Settlement Agreement as proof that (1) the Debtor has no equity in the Project and has no chance of a successful reorganization, and (2) that the Debtor commenced this bankruptcy case in bad faith, is ill-founded. The determination of whether a bankruptcy petition has been filed in bad faith is fact intensive. Indeed, in *In re Orange Park South Partnership,* 79 B.R. 79, 82 (Bankr.M.D.Fla. 1987), the Court listed no less than ten factors to be considered in making a determination as to whether a Chapter 11 case has been filed in bad faith. JCP has alleged that many of those factors exist in the instant case, however, JCP has not established any of those factors to the satisfaction of this Court simply by offering into evidence a copy of the pre-petition settlement agreement which, the Court notes, was signed well over two years before the commencement of the instant bankruptcy case. In this vein, it is not unreasonable to wonder whether the Debtor's circumstances or market conditions might not have changed during the lengthy period between the Debtor's execution of the pre-petition settlement agreement and the filing of the bankruptcy petition, thereby undercutting the thrust of the earlier representations.

The questions of whether the Debtor has equity in the Project, or can effectively reorganize, similarly require factual determinations. It is again not unreasonable to posit that if the Debtor's circumstances have changed, or market conditions have improved, the Debtor's acknowledgments to the contrary in a pre-petition settlement agreement two years earlier may no longer be valid. That is not to say that if the pre-petition settlement agreement were much more proximate in time to the bankruptcy filing, the result reached herein might not be different. Conversely, it is also not to say that the Debtor's earlier admission to the facts in the provision at issue will not weigh in the Court's analysis after a more complete factual record is developed at a subsequent evidentiary hearing. The somewhat dated settlement agreement standing alone, however, will hardly suffice for the purpose for which it is now offered.

Other courts have based their decisions to uphold pre-petition waivers of the automatic stay on public policy reasons. As explained in *In re Cheeks,*

> Perhaps the most compelling reason for enforcement of the forbearance agreement is to further the public policy in favor of encouraging out of court restructuring and settlements.... Bankruptcy Courts may be an appropriate forum for settling many of society's problems, but some disputes are best decided through other means. In the instant case, the Debtor received relief under the forbearance agreement approximating that which would have been available in a bankruptcy proceeding.

*Id.,* 167 B.R. at 819; *see also, In re Powers, supra.*

■ A bankruptcy court, as a court of equity, must balance the Congressionally expressed public policy underpinning the Bankruptcy Code with the instant objector's right to rely on the terms of a bargained-for prepetition settlement agreement. *See In re Tobago Bay Trading Co.,* 112 B.R. 463 (Bankr.N.D.Ga.1990). In this respect, the Court notes initially that consensual restraints against filing for bankruptcy (so-called ipso facto clauses) are, of course, contrary to a long line of authority as well as public policy. *In re Citadel Properties, Inc.,* 86 B.R. at 275. Technically speaking, a waiver of the protection of the automatic stay can be distinguished from a blanket prohibition against a bankruptcy filing. In this context, however, it may be a distinction without a meaningful difference.

■ The policy underlying the automatic stay is clearly stated in the legislative history to section 362(a), which states in relevant part that:

The automatic stay is one of the fundamental debtor protection provided by the bankruptcy laws. It gives a debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. *It permits the debtor to attempt a repayment or reorganization plan* or simply to be relieved of the financial pressures that drove him into bankruptcy.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 340 (1977); reprinted in *1978 U.S.Cong. & Admin.News 5787, 5963, 6296–6297* (emphasis added).

The instant case presents a paradigmatic example of a single asset case. That is, the Debtor owns the Project subject to a single secured claim. The Debtor has very few other creditors, a limited number of employees, and its purpose is essentially limited to operation of the Project. In single asset cases, particularly, the Court believes that the public policy behind the automatic stay may frequently outweigh the policy which favors encouragement of out of court restructuring and settlements.

In *In re Club Tower,* the Court said that enforcing a pre-bankruptcy agreement provision by which a debtor agrees not to oppose the granting to the lender of relief from stay is significantly different from a provision which prohibits a debtor from filing a bankruptcy provisions and thus there is no violation of public policy.

*Id.* at 311, citing *In re Citadel Properties, supra.*[3] This Court disagrees with that proposition as to the matter *sub judice.* As a practical matter, there may be little significant distinction between the enforcement of a pre-petition waiver of the automatic stay in a single asset case and the enforcement of a provision prohibiting the filing of a bankruptcy case in the first place.

A pre-petition waiver of the automatic stay may be simply a tailored form of relief, but its impact can be tremendous. Here—as in many "single asset cases," enforcement of the Debtor's pre-petition waiver of the protection of the automatic stay could quickly foretell the end of the Debtor's case. If the Debtor's single asset, i.e. the Project, passes from the bankruptcy estate through foreclosure, the Debtor, it can easily be seen, will have no realistic opportunity to attempt to formulate a repayment or reorganization plan. In the absence of a complete evidentiary hearing—wherein other grounds for modifying the stay are established, the Court believes that enforcement of the pre-petition waiver of the automatic stay in this instance too closely approximates the more reviled prohibition against filing for bankruptcy protection. Accordingly, the waiver of the automatic stay granted to JCP by the Debtor will not be enforced. That is not to say, however, that JCP will not receive any benefit from the waiver. The follow-up hearing will not proceed on a blank slate. On the contrary, the Court will consider the representations in the prepetition settlement agreement against whatever additional evidence might be forthcoming at the subsequent evidentiary hearing as a significant factor in its determination as to whether JCP will be granted relief.

An Order consistent with the foregoing conclusions accompanies this Opinion.

### ORDER

**AND NOW,** this 25th day of April, 1995, upon consideration of the Motion of Jenkins Court Pennsylvania, L.P. ("JCP") to Dismiss, or, in the alternative, For Relief From the Automatic Stay (the "Motion"), as well as the memoranda submitted by the parties, and after a hearing held on March 15, 1995, it is hereby

**ORDERED** that the Motion shall be and hereby is denied in accordance with the accompanying Opinion. It further **ORDERED,** however, that an evidentiary hearing will be held on May 11, 1995, at 9:30 a.m. for further proceedings with respect to the Motion.

---

**3.** In addition to its reliance on *In re Club Tower* and *In re Citadel Properties,* JCP relies on *In re Miguel DiSalva,* case no. 93–25452 (Bankr.D.N.J. September 19, 1993) (Winfield, J.) (bench order), wherein the Court said "[enforcement of a prepetition agreement to waive the automatic stay] is a very tailored form of relief. It does not carry the same impact for a debtor as would a provision that would deny the right to file a bankruptcy petition...." Transcript at 22.