In re Rohit N. DESAI, Debtor.

Southwest Georgia Bank, Movant,

v.

Rohit N. Desai, Respondent.

No. 02–10238.

United States Bankruptcy Court,
M.D. Georgia,
Albany Division.

July 25, 2002.

Walter W. Kelley, Kelley, Lovett & Mullis, P.C., Albany, GA, for Debtor.

## MEMORANDUM OPINION

JOHN T. LANEY, III, Bankruptcy Judge.

On April 24, 2002, the court held a hearing on the motion of SouthWest Georgia Bank ("SWGA") for relief from the automatic stay and SWGA's motion to dismiss the case. At the conclusion of the hearing, the court took the matters under advisement. The parties were given an opportunity to submit briefs. The court has considered the evidence, the parties' briefs and oral arguments, and the statutory and case law. The court will deny both motions.

### FACTS

The pertinent facts are not disputed. On or about February 5, 1997, Rohit N. Desai ("Debtor") executed a Security Deed and Agreement and a UCC–1 financing statement in exchange for SWGA's loan to Debtor. (*See* Exhs. M–B & M–C). SWGA's loan is secured by Debtor's real and personal property used in connection with Debtor's hotel operation which is located at 600 U.S. Highway 19 South in Camilla, Georgia. The hotel is operated by Desai Enterprises, Inc. ("Desai Enterprises").

Between 1998 and 1999, Debtor's hotel operation began to decline. This decline in business resulted in Debtor's default to, among others, the Small Business Administration ("SBA") and SWGA, the two largest secured creditors of Debtor's hotel operation. Debtor and Desai Enterprises' attempts to negotiate with SBA and SWGA were unsuccessful.

On or about December 6, 1999, Debtor and Desai Enterprises filed voluntary petitions under Chapter 11 of the Bankruptcy Code ("Code") in the Bankruptcy Court for the Northern District of Georgia.[1] Although those cases were not consolidated, Debtor and Desai Enterprises filed a Joint Chapter 11 Plan of Reorganization ("plan") on March 6, 2000. The proposed plan reflected SWGA's secured claim as an impaired claim on which settlement was being negotiated. (*See* Exh. "A" of Exh. M–D).

On or about October 16, 2000, Debtor and Desai Enterprises entered into a Commercial Installment Promissory Note and Security Agreement with SWGA thereby restructuring the debt. According to the terms of the restructured debt, Debtor and Desai Enterprises were to pay to SWGA a principal amount of $883,153.38 at 10% per annum. The principal and interest was to be paid over 59 months in monthly installments of $8522.25. On October 16, 2005, a balloon payment equal to the amount of the remaining unpaid principal and interest would be due. (*See* Exh. M–A).

---

1. *Rohit N. Desai,* Case No. 99–78033; *Desai* *Enterprises Inc.,* Case No. 99–78034.

On October 23, 2000, the terms of this restructured debt agreement were incorporated into the plan by the plan's Fifth Amendment. (*See* Exh. "F" of Exh. M–D). Also incorporated into the Fifth Amendment of the plan was the following language:

In addition, for a period of time from the Confirmation Date through the fifth (5th) anniversary of the Confirmation Date, the [Debtor and Desai Enterprises], separately or together, do not oppose and consent to a lifting of the automatic stay in any other bankruptcy or insolvency case or proceeding affecting the collateral subject to [SWGA's] Security Deeds and other security documents . . .

. . . [Debtor and Desai Enterprises] agree that neither [Debtor] nor [Desai Enterprises] shall commence, or cause or assist in the commencing of, a proceeding under the Bankruptcy Code within one hundred eighty (180) days from the Confirmation Date.

(*See id.* at § 5.5(A)(5))

On November 9, 2000, the bankruptcy court confirmed the plan by a consent order which was consented to by Debtor, Desai Enterprises, SWGA, SBA, and the United States Trustee. (*See id.*). On February 5, 2002, the bankruptcy court entered a Final Decree in Debtor's individual case. No evidence was presented as to when a final decree was entered in Desai Enterprises' case.

Debtor defaulted on his obligations under the confirmed plan and SWGA commenced foreclosure proceedings. On February 5, 2002, Debtor filed in this court the instant case under Chapter 11 of the Code.

The parties stipulate that Debtor is currently indebted to SWGA in an amount of $905,035.76. However, the issue before the court is whether the above language in Debtor's plan from his prior case is enforceable against Debtor in his current case.

SWGA argues that the terms of the plan's language in Debtor's prior case were negotiated and consented to by Debtor. Because these terms specifically contemplated what would happen in a future bankruptcy filing, SWGA contends that these terms should be enforced in the instant case. SWGA further argues that Debtor's current case should be dismissed as a bad faith filing. In addition to the terms of the plan, SWGA points out that Debtor filed the current case the day before the foreclosure sale was to take place. Also, this was the same day the final decree was entered in his prior case.

Debtor, however, disagrees that the terms in the plan in his prior case are enforceable in this case. Debtor concedes that "prepetition waivers" such as those in his prior plan may be enforced. Nevertheless, Debtor argues that such waivers cannot be enforced per se; certain factors must be present in order for them to be enforced. Moreover, prepetition waivers are especially unenforceable when they affect third-party creditors who were not party to the original agreement. In support of this latter contention, Debtor cites Lewis Autry, a *pro se* creditor who appeared at the hearing and opposed SWGA's motions.

In responding to the court's inquiry, Mr. Autry stated that he held claims against Debtor based on some notes which he signed with Debtor. Mr. Autry indicated that he signed one note for approximately $45,000.00 whereby he was jointly liable for money that was loaned to Debtor. On clarification from the court, Mr. Autry agreed that he had a contingent claim against Debtor for any loss the creditor on this note may incur. Presumably, this creditor is Family Bank. (*See* Schedule

"F"). Family Bank is secured by a second lien on the real property used in Debtor's hotel operation. In addition, Mr. Autry stated he has an unsecured claim against Debtor in the amount of approximately $50,000.00 for a "couple of notes" Debtor signed.

Although Mr. Autry responded to the court questions when he appeared, he never testified under oath nor did any party call him as a witness. Therefore, this is not evidence. The only evidence in the record regarding Mr. Autry's claim is Debtor's plan from his prior case. (*See* Exh. M–D, § 3.6). The plan provides that Mr. Autry is a Class 6 secured creditor holding a claim of approximately $13,000.00. This claim is secured by Debtor's automobile. (*See id.*) Morever, Debtor's schedules in his present case show Mr. Autry as a secured creditor on the automobile loan and as a co-debtor. (*See* Schedules "D" & "H").

### DISCUSSION

A number of courts have addressed the issue of the enforceability of prepetition waivers. However, research has produced no cases by the Eleventh Circuit or Middle District of Georgia courts addressing this point. Accordingly, this is an issue of first impression in this district.

While some courts have held that such waivers are valid, other courts have held to the contrary. *See In re Excelsior Henderson Motorcycle Mfg. Co.*, 273 B.R. 920 (Bankr.S.D.Fla.2002) (enforcing prepetition agreement); *In re Shady Grove Tech Ctr. Assoc. Ltd. P'ship*, 216 B.R. 386 (Bankr.D.Md.1998) (setting forth several

factors whether cause exists to warrant relief from stay); *In re Atrium High Point Ltd. P'ship*, 189 B.R. 599 (Bankr. M.D.N.C.1995) (holding that prepetition waivers are enforceable in appropriate cases); *In re Priscilla Cheeks*, 167 B.R. 817 (Bankr.D.S.C.1994) (enforcing prepetition forbearance agreement); *In re Jenkins Court Assoc. Ltd. P'ship*, 181 B.R. 33 (Bankr.E.D.Pa.1995) (holding that prepetition agreement would not enforced without further development of the facts); *In re Sky Group Int'l, Inc.*, 108 B.R. 86 (Bankr. W.D.Pa.1989) (holding that prepetition waiver was not self-executing or per se enforceable); *In re Club Tower, L.P.*, 138 B.R. 307 (Bankr.N.D.Ga.1991) (holding that prepetition waivers are enforceable).

The court finds that the facts in the *Excelsior* and *Atrium* cases are most analogous to the facts in the instant case. The debtors in *Excelsior* and *Atrium* entered into prepetition agreements as a result of a negotiated provision of a plan of reorganization in a prior bankruptcy case.[2]

In *Atrium*, the debtor managed and leased commercial office space in a two-story building. After several years of this operation, the debtor encountered difficulty in servicing its mortgage on the building. Although the debtor's mortgage holder allowed the debtor to modify its obligation several times, the debtor nevertheless ended up in Chapter 11. As a part of the plan in its Chapter 11 case, the debtor and its mortgage holder entered into an agreement whereby the debtor would not oppose relief from the stay to the mortgage holder in any subsequent case that

---

**2.** Like the courts in *Atrium* and *Excelsior*, the court finds this fact significant. Each of these courts seem to distinguish the fact that the prepetition waiver was agreed upon in the context of negotiating a plan provision. "Enforcing the Debtor's agreement under these

conditions does not violate public policy concerns. This is not a situation where a prohibition to opposing a motion to relief was inserted in the original loan documents...." *Excelsior* at 924 (citing *Atrium* at 607).

the debtor might file. *See Atrium* at 602–03.

Just as before, the debtor was unable to meet its expenses and defaulted on its obligation to its mortgage holder. Soon thereafter, the debtor filed a second Chapter 11 case. Based on the plan provision in the prior case, the mortgage holder promptly moved for relief from stay. However, the debtor opposed the motion and presented affidavits of third-party creditors who objected to the mortgage holder's motion. The court noted that all but one of these objecting third-party creditors assented to the debtor's plan in its prior case. *See id.* at 604, n. 2.

After a thorough review of the authority on both sides of the issue, the court held that "prepetition waivers are enforceable in appropriate cases." *Id.* at 607. First, the court discounted the notion that prepetition waivers in single asset cases are effectively a prohibition to filing bankruptcy. The court explained that up until relief is granted to the creditor who is a party to the prepetition agreement, the debtor has received the protection of the stay. Moreover, the debtor receives the benefit of the stay as to the other creditors, and retains all the rights provided to a debtor in bankruptcy. *See id.* at 607 (citing *Club Tower*, 138 B.R. at 311–12).

Second, the court addressed the bargain-for-exchange principle involved in arriving at the agreement in the prior case. The court noted that the debtor received a low interest rate and extension in exchange for the debtor's covenant not to oppose relief in a subsequent case. *See id.*

Lastly, the court turned to the issue of objecting third-party creditors and held that a debtor's prepetition waiver of relief from stay cannot bind third parties. *See id.* Therefore, in the presence of objecting third parties, the court concluded that it must consider all the factors as to whether sufficient "cause" exists to warrant relief from stay. This includes the circumstances under which the prepetition waiver arose, the substance of the third-party objections and whether there is equity in the collateral. Because there was equity in the collateral, the court found that the objections of the third-party creditors outweighed the prepetition waiver. Accordingly, to the extent that the mortgage holder's motion for relief was based on the debtor's prepetition waiver, the court denied relief from stay. *See id.* at 608.

Similar to the debtor in *Atrium*, the debtor in *Excelsior* experienced difficulty servicing its loan which resulted in the debtor filing a Chapter 11 petition. Pursuant to the debtor's Chapter 11 plan, the debtor restructured debt to its secured creditor. The debtor also agreed on a plan provision whereby the debtor would not oppose relief from stay as to that secured creditor in any subsequent bankruptcy case for three years. The plan was confirmed by the bankruptcy court. *See Excelsior* at 921.

Approximately one year after the effective date of its plan, the debtor defaulted under the terms of the restructured debt. The secured creditor sought and obtained a judgment against the debtor. On the day the public auction of the collateral was to take place, the debtor filed a second Chapter 11 case. In accordance with the plan provision in the debtor's prior case, the secured creditor moved for relief from stay. *See id.* at 922.

Relying on the holding in *Atrium*, the court in *Excelsior* found that the debtor's prepetition waiver of the automatic was enforceable. *See id.* at 924. Accordingly, the court granted the secured creditor's motion for relief from stay. *See id.* at 924–25. However, unlike *Atrium*, there

were no third party creditors objecting to relief from stay and there was no discussion of the issue of equity.

 The court finds that the reasoning from the court in *Atrium* is sound. Although prepetition agreements waiving the protection afforded by the automatic stay are enforceable, such waivers are not per se enforceable, nor are they self-executing. *See e.g., In re Sky Group*, 108 B.R. at 86. The court further finds that in deciding whether relief from stay should be granted based on such waivers, the following factors should be considered: (1) the sophistication of the party making the waiver; (2) the consideration for the waiver, including the creditor's risk and the length of time the waiver covers; (3) whether other parties are affected including unsecured creditors and junior lienholders, and; (4) the feasibility of the debtor's plan. *See Shady Grove* at 390 (quoting from *In re Merridale Gardens Ltd. P'ship*, No. 95-1-3091 (Bankr.D.Md. October 19, 1995) *aff'd* No. S-95-3334 (D.Md. Feb. 28, 1996)).

 In the instant case, Debtor entered into an agreement in which he would not oppose relief from stay in any subsequent case that he might file. This agreement was negotiated in the context of arriving at a consensual plan where both Debtor and SWGA were represented by counsel. Therefore, the court finds that Debtor, through counsel, was sufficiently sophisticated to enter into this agreement.

As to the consideration for entering into the agreement, the court finds that adequate consideration was exchanged on both sides of the agreement. Debtor received a 5-year extension of the maturity date of a loan in exchange for Debtor's promise not to oppose relief from stay in any subsequent case Debtor might file within 5 years. Based on these conditions, SWGA agreed to accept Debtor's plan.

Given the current stage of Debtor's case, the feasibility of Debtor's plan cannot be determined.

The court now turns to the factor of how granting relief from stay based on Debtor's waiver may affect other parties. At the hearing, Mr. Autry, a *pro se* creditor appeared and objected to relief from stay. As Debtor points out, Mr. Autry was not a party to the consent order confirming Debtor's plan which contained the waiver. Therefore, based on the holding in *Atrium*, Debtor argues that relief from stay based on Debtor's waiver should not be granted over Mr. Autry's objection.

However, unlike the instant case, there were nine objecting creditors in *Atrium* who submitted affidavits and the parties stipulated to their admission. *See Atrium* at 608, n. 6. As demonstrated above, the only evidence in this case as to Mr. Autry's claim is that, in Debtor's prior case, Mr. Autry held a $13,000.00 claim secured by Debtor's automobile. Based on this evidence, Mr. Autry has no interest in the property on which SWGA is seeking relief from stay. The court finds that granting SWGA's motion for relief from stay would have a minimal effect on Mr. Autry's claim. Therefore, in balancing Mr. Autry's objection with Debtor's agreement to not oppose SWGA's relief from stay, the court must give Debtor's waiver greater weight.

As to whether there is any equity in the property, SWGA has the burden of proof on this issue. *See* 11 U.S.C. § 362(g)(1). At the hearing, Mr. Andy Webb, SWGA's senior vice-president testified there is no equity in the property. However, Mr. Webb testified that he had no knowledge of the current value of the property. Furthermore, he acknowledged that an appraisal done in 1997 indicated a value of $1.2 million.

Debtor testified that the current value of the property is approximately $1.2 million.

He based this value on an appraisal done in Debtor's prior case. Moreover, Debtor testified that he received of an offer of $1.2 million to purchase the property. This potential purchaser later agreed on a purchase price of $1.4 million, but the purchaser could not obtain financing. Debtor further testified that he has made several improvements to the property and the hotel's occupancy rate has increased.

Based on this evidence, the court finds that SWGA has not carried its burden of showing that there is no equity in the property. Although some of the factors weigh in SWGA's favor, the court will not grant relief from stay at this time.

Therefore, the court will deny SWGA's motion for relief from stay. Pursuant to the court's Interim Cash Collateral Order entered on June 11, 2002, the court will direct Debtor to continue making adequate protection payments to SWGA in the amount of $7000.00 per month due on the last day of each month. In accordance with the parties' announcement at the Cash Collateral hearing held on June 6, 2002, Debtor will be held in strict compliance of making these payments.

 As to SWGA's motion to dismiss the case, the court will also deny that motion. SWGA asserts that Debtor filed the instant case in bad faith. However, the evidence fails to demonstrate that Debtor has "no realistic possibility of an effective reorganization ... or that the [D]ebtor seeks merely to delay or frustrate the legitimate efforts of secured creditors to enforce their rights...." *Albany Partners Ltd. v. W.P. Westbrook, Jr., et al.*, 749 F.2d 670, 674 (11th Cir.1984). SWGA relies on the case of *Phoenix Piccadilly, Ltd. v. Life Insurance Company of Virginia*, 849 F.2d 1393 (11th Cir.1988). In applying the standard pronounced in *Albany Partners*, the court in *Phoenix* set forth several factors in determining whether a petition is filed in bad faith. *See Phoenix* at 1394–95. Based on the facts of that case, the court found bad faith and therefore, affirmed the dismissal of the case. *See id.* at 1395.

Although some of the factors espoused in *Phoenix* are present, the evidence in the instant case "lacks the aggravating elements which were present in *Phoenix* ...." *In re Clinton Fields, Inc.*, 168 B.R. 265, 271 (Bankr.M.D.Ga.1994) (Walker, J.) (distinguishing *Phoenix*). Moreover, a mechanical application of these factors in the instant case does not result in a determination of bad faith. *See id.* Unlike the debtor in *Phoenix*, Debtor in the instant case attempted to negotiate with SWGA after he experienced a downturn in the travel industry. After these negotiations were unsuccessful, Debtor filed his current petition. Merely because Debtor filed the current case the day before the foreclosure sale was to take place does not amount to a bad faith filing as defined in the Eleventh Circuit cases.

 SWGA further argues that Debtor's case should be dismissed because Debtor filed the current case while his prior case in the bankruptcy court for the Northern District of Georgia was still pending. The court agrees that a debtor cannot have two simultaneous Chapter 11 cases. However, given the fact that Debtor filed his present case on the same day the final decree was entered in his prior case, any overlap in the two cases is de minimis. Therefore, the court rejects SWGA's argument that the timing of Debtor's filing amounts to a bad faith filing. Accordingly, the court finds that Debtor did not file the instant case in bad faith.

An order in accordance with this Memorandum Opinion will be entered this date.