**In re UNIVERSITY COMMONS, L.P., Debtor.**

**Bankruptcy No. 96–5813–8P1.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Aug. 9, 1996.

Alberto F. Gomez, Jr., Stichter, Riedel, Blain & Prosser, P.A., Tampa, FL, for debtor.

## ORDER ON MOTION FOR RELIEF FROM STAY AND ON MOTION TO DISMISS

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 case and the matter under consideration is a two-pronged attack on the University Commons, L.P.'s (Debtor) attempt to solve its financial problems under the protective umbrella of the automatic stay imposed by § 362(a) of the Bankruptcy Code. The Debtor's right to obtain relief under Chapter 11 is challenged by Barnett Bank of Southwest Florida (Barnett Bank) who filed the Motion to Dismiss the Petition for Bad Faith Filing, and also alternatively sought relief from the automatic stay.

In light of the fact that the Motion to Dismiss the Chapter 11 case presents a threshold issue, it will be considered first. In support of its Motion, Barnett Bank contends that, based on the undisputed facts of this case, the Petition for Relief was filed in bad faith, therefore, it is appropriate to dis-

miss the Debtor's Chapter 11 case pursuant to § 1112(b) for "cause." Inasmuch as Barnett Bank's Motion for Relief from the automatic stay is also based on "cause," which is a ground for relief, this Court will consider the undisputed facts as they apply to both Motions. These facts, as they appear from the record, can be summarized as follows.

The Debtor is a Delaware Limited Partnership created for the purpose of developing a tract of land located in Manatee County, Florida. The Debtor is basically a land holding company and its sole general partner is Duke & Benedict, Inc., a Delaware corporation (General Partner), which maintains its principal place of business in New Jersey. Under the applicable laws of the State of Florida, the property, comprised of 247 acres of land, is subject to Development of Regional Impact (DRI). The master plan was approved to develop the tract for a hospital, a medical center, a skilled nursing care facility, an independent living facility, a resort motel, an 18 hole golf course, and a small retail center. In essence, the property is zoned for a health park and an upscale golf-oriented retirement community.

On April 25, 1989, First Florida Bank, N.A., (First Florida) loaned $4.5 million to the Debtor. This loan was memorialized by the execution of a Commercial Property Note (Note) by the Debtor in the principal amount of the amount loaned. The Note carried a variable rate of .5% per annum simple interest over the prime interest rate of the Lender. The Note was due on April 25, 1991, and was payable monthly until maturity. The Note was secured by a first mortgage on the property and also granted a security interest in the improvements, equipment, leases, rents, rights and guaranties and provided for a collateral assignment of rents. It also granted the Lender a security interest in a $100,000.00 demand deposit account held by the Lender. The Note was also guaranteed by the Debtor's General Partner. As the result of the execution by the Debtor of several commercial, consolidation and renewal Notes, the Debtor became further indebted to First Florida in the additional principal amount of $3,800,000.00. As of September 10, 1990, the Debtor was indebted to First

Florida in the aggregate principal amount of $8,300,000.00. First Florida extended the maturity date of the Note several times. As the result of a merger later on, Barnett Bank became the successor of First Florida and, at the request of the Debtor, Barnett also extended the time for repayment of the outstanding balance under the Note evidencing the indebtedness of the Debtor. The last extension was to run through December 31, 1994.

The Debtor failed to repay the fully matured Note on time, it was in default and, in order to escape the loss of the property and avoid a foreclosure suit, commenced to negotiate with Barnett. On January 30, 1995, the Debtor, Duke & Benedict, its General Partner, and Barnett Bank entered into a Settlement Agreement (Agreement) (Barnett Exh. 1), which was subsequently modified on April 13, 1995.

Under the Agreement, the Debtor and its General Partner stipulated that Barnett was entitled to commence a foreclosure action on its mortgage on the property, which they would not oppose and, in fact, they would consent to the entry of a Final Judgment of Foreclosure. Most importantly, the Debtor and its General Partner admitted that, in light of the value of the property and the amount of the total indebtedness, Barnett was entitled to immediate relief from the automatic stay in the event the Debtor became a debtor under the Bankruptcy Code. Specifically, the Debtor and its General Partner agreed in Paragraph 22(d) of the Settlement Agreement, that:

If any of the Obligors become the subject of a bankruptcy case, then each of the Obligors specifically agrees and consents that Barnett shall be entitled, forthwith, to the entry of an order:

(1) Granting complete relief from stay so that Barnett may foreclose or otherwise enforce its rights and remedies in the Lawsuit pursuant to non-bankruptcy laws;

(2) Dismissing said case as a "bad faith" filing and determining (i) that no rehabilitation or reorganization consistent with the Congressional intent and protection afforded by Chapter 11 is possible, and (ii) that dismissing all proceedings in said case is in the best interest of these parties, Barnett, and all other creditors; and ...

In addition, Barnett was granted the right to obtain the appointment of a Trustee if it decided to seek the appointment, and the Debtor and its General Partner would cooperate and assist Barnett in the procurement of the orders necessary to effectuate the Agreement. Under the Settlement Agreement the Debtor could forestall the foreclosure sale only if it met certain specific payment conditions.

Barnett did commence a suit to foreclose its mortgage pursuant to the Settlement Agreement when the Debtor failed to live up to the conditions for the moratorium, and on April 27, 1995, obtained an Amended Final Judgment of Foreclosure (Final Judgment). The Final Judgment held, *inter alia*, that the Debtor and Duke & Benedict were indebted to Barnett in the total amount of $8,064,-739.72; that Barnett's lien was superior in rank to any other claims of interest in the subject property; and ordered that the property be sold at a foreclosure sale on May 22, 1995. Under the Settlement Agreement, the Debtor could forestall the foreclosure sale only if it met certain specific conditions.

The sale was rescheduled several times and finally reset for March 27, 1996 and was scheduled to be held when the Debtor filed its Petition for Relief under Chapter 11 on the same day. Of course, because of the automatic stay triggered by the filing, the sale was not held.

Although the property is zoned for a health park facility, no development has begun after seven years. Instead, the property remains vacant except for a grove of orange trees. The record indicates that, if developed as intended, that is, as it is zoned, the property is worth $7 million and the outstanding balance owed to Barnett is $7,610,-882.63 plus attorneys' fees and costs. There is evidence in this record presented by the Debtor that the property is worth $13 million as is, and $23 million if fully developed. Of course, in this connection, as noted earlier, during the past seven years the Debtor has

done nothing to develop the property, at all, let alone pursuant to the Master Plan.

This is a single asset case. The Debtor is not engaged in the operation of any business in the orthodox sense. It has no employees and its only activity in the past several years consisted of its efforts to save this property through negotiations with the holder of the mortgage encumbering the property, first with First Florida, and later with Barnett Bank, hoping that somehow if it is able to gain time, it might be able to either develop the property or sell same.

This basically is a two party dispute. Although the Debtor, according to the list of the 20 largest creditors filed, is indebted in the amount of $2,059,235.39 to the creditors, half of the 20 largest creditors are insiders and law firms who represented the Debtor in the past. The full Schedule of Unsecured Creditors lists a total of unsecured debts of $10,661,279.25, of which only $804,599.35 is owed to non-insiders, inclusive of professionals.

These are basically the relevant facts based on which Barnett contends it is entitled to the relief it seeks, which is either a dismissal of the Chapter 11 case based on bad faith filing, or an Order lifting the automatic stay for "cause."

 Under the Act of 1898, the Debtor who sought relief under Chapter X had to make an affirmative showing that the Petition was filed in good faith before a Petition was approved by the Court. See § 141–144, Bankruptcy Act of 1898. There is no such requirement under the Code. Nevertheless, it is now well-established that the requirement for good faith is an implied requirement to maintain a Chapter 11 case or, to put it conversely, the lack of good faith is "cause" for dismissal pursuant to § 1112(b) of the Bankruptcy Code. The courts interpreting this Section have developed an extensive body of case law which involved the question of whether or not a debtor may maintain a Chapter 11 case if the record established that the Petition was not filed in good faith.

Generally speaking, when a Chapter 11 case was sought to be dismissed on the basis of bad faith filing, the debtor was a debtor with one single asset who had no meaningful unsecured debts; the controversy which triggered the filing was basically a two-party dispute mainly between the mortgagor and the mortgagee; the case involved a dispute which has already been completely resolved in a non-bankruptcy forum in a foreclosure action and when there was nothing remaining except the sale of the property at a foreclosure sale. *In the Matter of South County Realty, Inc.,* 69 B.R. 611 (Bankr.M.D.Fla. 1987); *In the Matter of Welwood Corporation,* 60 B.R. 319 (Bankr.M.D.Fla.1986); *In re American Property Corporation,* 44 B.R. 180 (Bankr.M.D.Fla.1984).

 The classic definition of "bad faith" is stated in the oft cited case of *In re Little Creek Development Co.,* 779 F.2d 1068 (5th Cir.1986) as the following:

(1) debtor has one asset such as a tract of undeveloped or developed real property;

(2) the secured creditors' liens encumber this tract;

(3) there are generally no employees except for the principals;

(4) little or no cash flow, and no available sources of income to sustain a plan of reorganization or to make adequate protection payments;

(5) few, if any, unsecured creditors whose claims are relatively small;

(6) the property has usually been posted for foreclosure because of arrearages on the debt;

(7) the debtor has been unsuccessful in defending actions against the foreclosure in state court;

(8) the debtor and one creditor may have proceeded to a standstill in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford;

(9) allegations of wrongdoing by the debtor or its principals; and,

(10) the "new debtor syndrome" in which a one-asset equity has been created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors.

*Id.* at 1073. *See, e.g., In re Orange Park South Partnership,* 79 B.R. 79 (Bankr. M.D.Fla.1987)

The undisputed facts as revealed in this record clearly put the Debtor in an indefensible position when one applies the factors set forth in *Little Creek, supra.* However, this case is even worse than any of the cases cited which dealt with this issue because, in this particular case, the Debtor in the Settlement Agreement agreed that in the event the Debtor seeks relief in the Bankruptcy Court, Barnett will be entitled to lift the automatic stay forthwith and obtain a dismissal of its case on the basis it was filed in bad faith. In addition, the Debtor conceded in the Settlement Agreement that its rehabilitation or reorganization efforts are not consistent with the Congressional intent and the dismissal of the Chapter 11 case would be in the best interest of all parties.

Thus, this case squarely matches the facts involved in the case of *In re Orange Park South Partnership,* 79 B.R. 79 (Bankr. M.D.Fla.1987), in which the Debtor also conceded and stipulated that it had no valid defense to the claim of the mortgagee and also conceded that, in the event the Debtor sought relief in the Bankruptcy Court, it agreed that the Petition was filed solely for the purpose of delay. The proposition that nevertheless the Debtor should be given an opportunity to proceed and attempt to present its plan of reorganization has been flatly rejected by the 11th Circuit Court of Appeals, *In re Natural Land Corporation,* 825 F.2d 296, 298 (11th Cir.1987), which stated:

> "the taint of a petition filed in bad faith must naturally extend to any subsequent reorganization proposal; thus, any proposal submitted by a debtor who filed his petition in bad faith would fail to meet section 1129's good faith requirement."

The possibility of a successful reorganization cannot transform a bad faith filing into one undertaken in good faith.

There is no allegation or showing here, as was contended in *Orange Park South, supra,* that the concession made by the Debtor when it entered into the Settlement Agreement was the result of duress or overreaching, and this Court is satisfied that the stipulation set forth in the Settlement Agreement is binding on the Debtor and the Debtor cannot escape its consequences.

Based on the foregoing, this Court is constrained to concur with the principles set forth in the cases *In re Albany Partners, Ltd.,* 749 F.2d 670 (11th Cir.1984); *In re Phoenix Piccadilly, Ltd.,* 849 F.2d 1393 (11th Cir.1988); *In re Little Creek Development Co.,* 779 F.2d 1068 (5th Cir.1986), but also is satisfied that the Debtor is bound to the terms of the Settlement Agreement and for this reason it is appropriate to grant the relief sought by Barnett. Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion to Dismiss the Petition for Bad Faith Filing, filed by Barnett Bank of Southwest Florida, be and the same is hereby granted and the case is hereby dismissed. It is further

ORDERED, ADJUDGED AND DECREED that the Motion of Barnett Bank of Southwest Florida for Relief from the Automatic Stay, or, Alternatively, For Adequate Protection be, and the same is hereby, granted and the stay is hereby lifted.