## In re EXCELSIOR HENDERSON MO-TORCYCLE MANUFACTURING COMPANY, INC., Debtor.

### No. 01–36461–BKC–PGH.

United States Bankruptcy Court, S.D. Florida.

Feb. 11, 2002.

Gary L. Barnhart, Jefferson, City, MO, Phillip Bohl, Minneapolis, MN, Michael J. Compagno, West Palm Beach, FL, John D. Eaton, Miami, FL, David E. Flowers, St. Paul, MN, David B. Galle, Minneapolis, MN, Robert N. Gilbert, West Palm Beach, FL, Ilyse, M. Wrubel Homer, Paul Steven Singerman, Miami, FL, Jeffrey S. Wood, Ft. Lauderdale, FL, for creditors.

Robert C. Furr, Boca Raton, FL, for debtor.

### MEMORANDUM OPINION AND ORDER GRANTING FINOVA PUBLIC FINANCE, INC.'S AMENDED MOTION FOR RELIEF FROM THE AUTOMATIC STAY

PAUL HYMAN, Bankruptcy Judge.

**THIS MATTER** came before the Court on January 16, 2002 upon Finova Public Finance, Inc.'s ("Finova") Amended Motion for Relief from the Automatic Stay (the "Motion"). The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(G).

### FINDINGS OF FACT

On December 6, 2001, Excelsior Henderson Motorcycle, Manufacturing Company (the "Debtor") filed with this Court a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Pursuant to §§ 1107 and 1108 of the Code, the Debtor continues to operate its business as a debtor in possession. This is not the Debtor's first bankruptcy filing. On December 21, 1999, the Debtor filed a voluntary Chapter 11 petition with the United States Bankruptcy Court for the District of Minnesota (Case No. 99–46679–RJK)(the "Minnesota Case").

In the Minnesota Case, Finova was a secured creditor. Finova was the assignee of a Bond issued by the Economic Development Authority of the City of Belle Plain, Minnesota (the "EDA"). The Debtor assumed liability for payment of the Bond under the terms of a Loan Agreement entered into between the EDA and the Debtor. The proceeds of the Bond and the Loan Agreement were used by the Debtor to purchase certain equipment and tooling to be used by the Debtor in connection with the manufacture of motorcycles. The Debtor's obligations under the Bond and the Loan Agreement were secured by a valid and fully perfected lien and security interest in the equipment and tooling purchased with the proceeds of the Bond and the Loan Agreement, and by certain reserve accounts held by National City Bank. As of the commencement of the Minnesota Case, the balance outstanding on the Bond and the Loan Agreement was not less than $5,856,311.56.

During the Minnesota Case, the Debtor proposed a Modified Plan of Reorganization (the "Plan"). The Plan was confirmed by the Minnesota Bankruptcy Court on August 18, 2000. The Effective Date of the Plan was September 14, 2000. Pursuant to the Plan, the Debtor executed and delivered to Finova a Second Restructured Note (the "Note") to replace its obligations under the Bond and the Loan Agreement. The principal amount of the Note was $4,949,097.33. The Plan required that one of the terms of the Note was a consent to stay relief in the event of a later bankruptcy filing. Specifically, the relevant provision of the Plan stated:

> Waiver of Automatic Stay: The Reorganized Debtor will waive the benefit of the automatic stay as it relates to Finova with respect to any bankruptcy proceeding commenced by or against the Reorganized Debtor during the first three years following the Effective Date.

In accordance with the Plan, the corresponding provision in the Note provides as follows:

21. *Consent to Relief from Stay.*

> Company hereby agrees that, in the event the Company (by its own actions, or the action of any of its shareholders or creditors), (if applicable), on or before September 14, 2003, files or has filed against it (with an order for relief being entered) another case under the Bank-

ruptcy Code of 1978, as previously or hereafter amended, Lender shall thereupon be entitled to relief from the automatic stay of Section 362 of Title 11 of the U.S.Code, as amended, on or against the exercise of the rights and remedies available to the Lender under this Note and the Company hereby waives the benefits of such automatic stay and consents and agrees to raise no objection to such relief.

Subsequently, the Debtor defaulted under the terms of the Note. The Debtor, *inter alia*, ceased operations, failed to provide Finova with certain required financial statements, and removed some of Finova's collateral from its premises. Accordingly, Finova filed a Complaint in the District Court for the First Judicial District of the State of Minnesota (the "Minnesota State Court"). On August 1, 2001, the Minnesota State Court entered a final judgment in favor of Finova and against the Debtor in the amount of $5,310,971.00.

In accordance with its rights under the Minnesota State Court Judgment, Finova scheduled a public auction of certain inventory, equipment, motorcycles and other property of the Debtor. The auction was scheduled to take place on December 6, 2001 at 11:00 a.m., CST. On December 6, 2001, at approximately 10:30 a.m., CST, Finova was informed that the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, instituting the instant Case before this Court.

On December 18, 2001, Finova filed an Amended Motion for Relief from the Automatic Stay (the "Motion"). In its Motion, Finova argues that by virtue of the provision in the Note, as well as the provision in the Plan, the protection afforded by the automatic stay is waived, vis-a-vis any collateral in which Finova has a perfected security interest. Finova further argues that the Debtor neither has equity in the collateral securing Finova's claim, nor does the Debtor need the collateral for an effective reorganization.

In response, the Debtor argues that the waiver provisions under the Plan and in the Note are unenforceable. Contrary to Finova's position, the Debtor argues that the collateral is necessary to the Debtor's reorganization. Accordingly, the Debtor prays that the Court deny Finova's Motion.

### *CONCLUSIONS OF LAW*

The Bankruptcy Code provides that the filing of a petition under Chapter 11 of the Code operates as an automatic stay of most activity against the debtor's property, including actions to realize the value of collateral securing an obligation of the debtor. 11 U.S.C. § 362(a). The purpose of the automatic stay is well known. "It stops all collection efforts and gives the debtor a 'breathing spell' so he can be relieved of the pressures that drove him into bankruptcy and attempt to develop a repayment or reorganization plan that will satisfy his outstanding debts." *In re Atrium High Point Ltd. P'ship*, 189 B.R. 599, 605 (Bankr.M.D.N.C.1995).

Although the scope of the automatic stay is broad, creditors do have remedies available to them. In order to place both debtor and creditors on equal footing, the Code specifically allows creditors to seek relief from the automatic stay under 11 U.S.C. § 362(d). Section 362(d) provides:

On request of a party in interest and after notice and a hearing, the court

shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d). In the instant case, Finova seeks relief from the automatic stay under § 362(d)(1) and (d)(2). Finova argues that there is sufficient "cause" to lift the stay because of the terms of the Note and Plan wherein the Debtor agreed that it would not oppose any Motion by Finova seeking relief from the automatic stay. Additionally, Finova argues that it is entitled to relief under § 362(d)(2) because the collateral securing Finova's judgment is not necessary for an effective reorganization.

The main issue before the Court is whether a pre-petition agreement which waives the Debtor's right to enjoy the protection of the automatic stay is enforceable. Although there is a plethora of authority within the Bankruptcy Courts of the Middle District of Florida, this issue appears to be one of first impression in this District. *See In re Citadel Prop., Inc.,* 86 B.R. 275 (Bankr.M.D.Fla.1988); *In re International Supply Corp.,* 72 B.R. 510 (Bankr.M.D.Fla.1987); *In re Gulf Beach Dev. Corp.,* 48 B.R. 40 (Bankr. M.D.Fla.1985).

There are numerous cases that explore the issue of pre-petition waivers of the automatic stay; however, the most analogous to the case *sub judice* is *In re Atrium High Point Ltd. Partnership,* 189 B.R. 599 (Bankr.M.D.N.C.1995). In *Atrium,* the debtor was a partnership formed for the purpose of managing a two-story office building, its sole asset. *Id.* at 602. The debtor had chronic difficulties servicing its mortgage on the building. *Id.* It entered into several agreements with its lender to modify the terms of the loan but was unable to avoid bankruptcy. *Id.* at 602–03. As part of the plan in its first Chapter 11 case, the debtor and lender entered into yet another modification of the mortgage note. *Id.* The modification and the debtor's Chapter 11 plan, approved by the court and assented to by all the debtor's pre-petition creditors, contained language prohibiting the debtor from objecting to any motion to lift stay in any subsequent bankruptcy proceeding. *Id.* at 603.

A little under two years later, it filed a second Chapter 11 petition. *Atrium,* 189 B.R. at 603. The lender sought relief from stay under § 362(d)(1). *Id.* at 605. The lender argued that there was "cause" to lift the stay because of the pre-petition agreement and prior plan treatment wherein the debtor agreed it would not oppose any lift stay motion by the lender. *Id.* The debtor and other creditors objected.

The court, after reviewing arguments for and against the enforceability of bargained for pre-petition waivers of the automatic stay, concluded that such waivers are enforceable in appropriate cases. *Id.* at 607. The court reasoned that:

Although an order of this court granting relief from stay may debilitate the Debtor somewhat, the Debtor accepted that risk when it agreed to the prepetition waiver of the automatic stay. There was no prepetition waiver in the original loan agreement or under the First or Second Modification. The agreement not to object to the motion to lift stay

was bargained for under the Third Modification and under this Debtor's first confirmed plan of reorganization. . . .

Enforcing the Debtor's agreement under these conditions does not violate public policy concerns. This is not a situation where a prohibition to opposing a motion to relief from stay was inserted in the original loan documents. The Debtor received significant benefits under the Third Modification and the confirmed plan treatment of [the lender]. In exchange for these benefits, the Debtor bargained away its right to oppose a motion to lift stay in a subsequent bankruptcy proceeding. Accordingly, the court will not consider the objection to relief from stay filed by the Debtor.

*Atrium,* 189 B.R. at 607.

The line of cases from the Middle District of Florida, beginning with *In re Gulf Beach Development Corp.,* dealt primarily with agreements which waived the automatic stay outside the purview of the court. In the instant case, as in *Atrium,* the Debtor bargained away the protection of the automatic stay as part of a plan of reorganization which was confirmed by the court. As part of the Debtor's Plan in the Minnesota Case, in exchange for the Debtor's waiver of the automatic stay, the Debtor received significant consideration under the Note and Plan.

Having determined that the Debtor received valuable consideration in exchange for a benefit it would receive under the Bankruptcy Code, the Court agrees with the holding in *Atrium,* and finds that the provision waiving the automatic stay is specifically enforceable. To hold otherwise would belie the rationale behind entering into such pre-petition stipulations. As stated most aptly by Judge Paskay in *In re B.O.S.S. Partners I,* 37 B.R. 348 (Bankr.M.D.Fla.1984), "a stipulation freely entered into by the parties is binding on the parties. In the context of a stay litigation, such stipulation operates as a waiver by the debtor of any right to obtain protection from the Court against proceedings instituted by a secured party for the purpose of enforcing its security interest." *Id.* at 350–51.

Additionally, the Court finds that the enforcement of such agreements furthers the public policy in favor of encouraging out of court restructuring and settlements. "Bankruptcy courts may be an appropriate forum for resolving many of society's problems, but some disputes are best decided through other means." *In re Cheeks,* 167 B.R. 817, 819 (Bankr.D.S.C.1994). In the instant case, the Debtor has once received the full benefit of the automatic stay. Under the Note and the Plan, the Debtor gained an opportunity to start a new payment schedule which would prevent further action as long as the Debtor made the agreed payments. To allow the Debtor to again receive the benefits of the automatic stay would be inconsistent with this Court's policy of favoring settlement agreements.

## CONCLUSION

For the reasons offered above, the Court finds that the pre-petition agreement to waive the Debtor's right to enjoy the protection of the automatic stay in the case at bar is valid and enforceable.

## ORDER

In light of the foregoing, and with the Court being otherwise fully advised in the premises, it is hereby **ORDERED AND ADJUDGED** that:

1. Finova, and any successor in interest, is granted immediate, full, and complete relief from the automatic stay imposed by 11 U.S.C. § 362 in order to pursue all of its rights and

remedies as a secured creditor including the rescheduling and conducting of a sale of any and all of the Debtor's property securing the indebtedness due Finova including, but not limited to, the property identified on Exhibit A attached hereto, and the application of sales proceeds to the Note.

2. In addition, Finova, and any successor in interest, is granted immediate relief from the automatic stay to enforce the Findings of Fact, Conclusions of Law and Order for Judgment, and Judgment entered on or about August 1, 2001 by the District Court for the First Judicial District of the State of Minnesota (the "Minnesota State Court"), or in any other manner permitted under applicable state law. In particular, Finova may enforce the Judgment as it relates to the securing of its collateral and access to the Debtor's premises. Finova may not take any action with respect to any property of the Debtor that is not set forth in attached Exhibit A.

3. This Order shall be effective forthwith, and the ten (10) day period prescribed by Federal Rule of Bankruptcy Procedure 4001(a)(3) shall not apply. Finova, and any successor in interest, is therefore entitled to immediately begin taking any and all steps necessary to schedule, advertise, conduct, and complete the foreclosure sale approved by the Court as set forth above.

## EXHIBIT A

### Description of Collateral

(a) All manufacturing equipment, tooling, and personal property owned by the Debtor and: (i) purchased with the proceeds of that certain Taxable Industrial Development Revenue Bond (Excelsior-Henderson Project), Series 1998, issued in favor of the FINOVA by the Economic Development Authority of the City of Belle Plaine, Minnesota on or about July 1, 1998 in the original principal amount of $6,100,000 (the "Bond"); or (ii) for which the Debtor has been reimbursed with the proceeds of the Bond: or (iii) which was otherwise pledged as security pursuant to the Loan Agreement executed between the Debtor and the Economic Development Authority of the City of Belle Plaine, Minnesota on or about July 1, 1998; and (iv) which is listed on any and all UCC-1 financing statements filed or with respect to the manufacturing equipment, tooling, and personal property paid for with the proceeds of the Bond: and (b) all replacements, substitutions, repairs and proceeds relating to the foregoing, and all documents, ledger sheets and files of the Debtor relating to the foregoing, including any insurance payable by reason of loss or damage to any item of collateral or any proceeds.